Brian S. King, #4610
Brent J. Newton, #6950
Samuel M. Hall, #16066
Tera Peterson,
**BRIAN S. KING, P.C.**
420 East South Temple, Suite 420
Salt Lake City, UT 84111
Telephone: (801) 532-1739
Facsimile: (801) 532-1936
brian@briansking.com
brent@briansking.com
samuel@briansking.com
tera@briansking.com

Attorneys for Plaintiff

THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| JILL L. JENSEN<br><br>Plaintiff,<br><br>vs.<br><br>LIFE INSURANCE COMPANY of NORTH AMERICA and CIGNA HEALTH AND LIFE INSURANCE COMPANY<br><br>Defendants. | COMPLAINT<br><br>Civil No. 2:22-cv-00293<br><br>Judge Dale A. Kimball |

Plaintiff Jill L. Jensen ("Jill") through her undersigned counsel, alleges and complains against Defendants Life Insurance Company of North America ("Life Insurance Co.") and Cigna Health and Life Insurance Company ("Cigna") (collectively "Defendants") as follows:

**PARTIES, JURISDICTION AND VENUE**

1. Jill is a natural person residing in Utah County, Utah. Jill's late husband, Steven D. Jensen ("Steven") passed away on February 1, 2019. At the time of his passing, Jill and Steven lived in Utah County, Utah.

1

2. At the time of Steven's death, he was employed by Codale Electric Supply, Inc ("CES"). CES provided a variety of benefits for its employees and their dependents including, but not limited to, the Group Accident Policy ("the Plan").

3. Defendants do business throughout the United States and in the State of Utah. Life Insurance Co. was the insurer for the Plan and Cigna was the claims administrator.

4. The benefits at issue in this case were provided by the Plan through the purchase of a group life insurance policy and are subject to the requirements of Utah insurance law.

5. This is an action brought under ERISA. This Court has jurisdiction of this case under 29 U.S.C.§ 1132(e)(1). Venue is appropriate under 29 U.S.C. § 1132(e)(2) and 29 U.S.C. § 1391(c) because the parties reside or do business in the State of Utah.

6. In addition, Jill has been informed and reasonably believes that litigating the case outside Utah will likely lead to substantially increased litigation costs for which she will be responsible to pay, which would not be incurred if venue of the case remains in Utah.

7. The remedies Plaintiff seeks under the terms of ERISA and under the terms of the Plan are for benefits due to her pursuant to 29 U.S.C. §1132(a)(1)(B) in connection with the Plan.

8. The remedies the Plaintiff seeks are for an Order that Defendants pay the accidental death and dismemberment ("AD&D") benefit as required under the terms of the Plan, for an award of prejudgment interest, and for an award of attorney fees pursuant to Utah Code Ann. §15-1-1.

## FACTUAL BACKGROUND

9. Steven had been suffering from chronic pain for many years and held an oxycodone prescription for over 3 years prior to his passing.

10. Steven's oxycodone prescription was renewed by Andrew Ward ("Mr. Ward") at PGUT Neuroscience & Rehabilitation Specialists about six weeks before he passed away.

11. Mr. Ward saw Steven on December 19, 2018, at a pain management clinic and Steven was screened for any red flags of suicide ideation or plans and passed the screening.

12. Mr. Ward determined that Steven was using his oxycodone properly and refilled his prescription.

13. Steven was struggling with anxiety and saw Dr. Michael Cosgrave ("Dr. Cosgrave") at Premier Family Medical on January 30, 2019.

14. Dr. Cosgrave prescribed Steven clonazepam to take as needed when he was unable to manage his anxiety.

15. On the night of January 31, 2019, Steven went to bed and on February 1, 2019, Jill found Steven dead in the bedroom.

16. Steven's autopsy determined that he died of "[o]xycodone and clonazepam toxicity" and it is noted, "Manner of Death: Accident."

17. Reactions, including death, are well documented in the medical community when mixing oxycodone and clonazepam.

18. On September 4, 2019, Chris Higley from Eisenberg, Cutt, Kendell & Olson wrote a letter to Defendants alerting them of Steven's passing on behalf of Jill.

19. The September 4, 2019, letter states in part,

> Enclosed with this letter, please find a copy of a claim form submitted on behalf of our client, Jill Jensen and the Estate of Steven D. Jensen, regarding the accidental death of Steven D. Jensen, the husband of Jill Jen Steven's employer, Codale Electric, that they have submitted similar forms on two previous occasions. However, each time I have called Cigna, I have been told no paperwork has been submitted. I have made several calls to Cigna including, but not limited to, calls on the following dates: June 20, 2019, June 21, 2019, and August 1, 2019.

3

> …
> In addition to the previous submitted paperwork, **we hereby demand that Cigna pay the entire amount of both the Life Insurance and the AD&D benefits available under all applicable policies. We demand payment be made within 30 days (by Oct. 4, 2019).**[1]

20. The September 4, 2019, letter also included Steven's death certificate and select pages of Steven's insurance certificate.

21. In a letter dated September 12, 2019, Cigna stating in part,

> Thank you for sending the Group Term Life and Accidental Death Insurance claim for Steven Jensen.
> …
> I am contacting the Policyholder for additional information. Once received, I will be able to provide you with further details regarding your request for benefit amounts and a copy of the applicable policies. While my review is ongoing, I will provide you with the status of this claim ever thirty days.

22. In a letter dated October 1, 2019, Cigna approved the life insurance for Steven Jensen.

23. In a separate letter dated October 1, 2019, Cigna states in part,

> I am writing to tell you that the Group Accidental Death claim for Steven Jensen is still being reviewed. I will provide you with the status of this claim every thirty days.
> I am currently waiting to receive a copy of the investigative reports from the Lehi Police Department and Utah Office of the Medical Examiner (OME). The Utah OME requires the enclosed Records Request Authorization Form to be signed by the legal next of kin and **notarized.** As such, please have Mrs. Jensen complete and return the notarized OME Form to me.
> …
> MR. Higley, per your request, the total benefit amounts under review for this claims are $10,000 in Basic Accidental Death Insurance and $100,000 in Supplemental Accidental Death Insurance.

24. On October 15, 2019, Mr. Higley submitted the forms that Cigna requested via US Mail and Fax.

25. In a letter dated October 28, 2019, Cigna stated in part,

---

[1] Emphasis in original

4

> I am writing to tell you that the Group Accidental Death claim for Steven Jensen is still being reviewed. I will provide you with the status of this claim every thirty days.
>
> Thank you for providing Mrs. Jensen's completed authorizations forms.

26. In a letter dated December 4, 2019, Cigna denied the AD&D claim stating in part,

> I have completed my review of Jill Jensen's claim for Group Accidental Death insurance and have determined that this benefit is not payable.
> …
> In order to qualify for benefits, the details of your claim must satisfy all of the applicable policy provisions.
>
> **Policy Provision**
> The Codale Electric Supply, Inc. policy SOK 601206 states:
>> "***COMMON EXCLUSIONS***
>> *In addition to any benefit-specific exclusions, benefits will not be paid for any /covered Injury or Covered Loss which, directly or indirectly, in whole or in part, is caused by or results from any of the following unless coverage is specifically provided for by name in the Description of Benefits Section:*
>> *7. Sickness, disease, bodily or mental infirmity, bacterial or viral infection or medical or surgical treatment thereof, except for any bacterial infection resulting from an accidental external cut or wound or accidental ingestion of contaminated food;*
>> *11. voluntary ingestion of any narcotic, drug, poison, gas or fumes, unless prescribed or taken under the direction of a Physician and taken in accordance with the prescribed dosage.*
>
> …
> The Assistant Medical Examiner specifically states that Mr. Jensen had "a high toxic/borderline lethal level of oxycodone" in his blood, and the level of this drug found in his system is within the documented lethal range. Thus, the levels of these drugs are higher than would be expected that if [sic] taken as prescribed. … For these reasons, we have determined that his death was "*directly or indirectly, in whole or in part,*" caused by or the result of his "*voluntary ingestion of any narcotic, drug,*" namely oxycodone, that he was not taking "*in accordance with the prescribed dosage.*" Therefore, the loss is specifically excluded under the terms of policy SOK 601206.

27. On January 31, 2020, Mr. Higby appealed the denial rendered by Cigna. This appeal

states in part:

//

5

> The autopsy report from the Utah OME's office states:
> Manner of Death:        Accident
> Immediate Cause of Death: Oxycodone and clonazepam toxicity
> …
> First and foremost, the toxicology results do not show Steven overdosed or took any amount of oxycodone beyond the amount he was prescribed. In CIGNA's denial letter, CIGNA quotes from *Disposition of Toxic Drugs and Chemicals in Man: Tenth Edition*, written by Dr. Randall Baselt, in addressing oxycodone levels and their significance post mortem. I have contacted Dr. Randall Baselt and asked him to review the documents included here at <u>Exhibits B-E.</u> He has done so. His conclusion is that, based on the prescribed dosages and the resulting toxicology screen, the oxycodone, oxymorphone, and clonazepam "concentrations are consistent with what I would expect to find in someone taking oxycodone and clonazepam as they were prescribed to Mr. Jensen."
> …
> Further evidencing Steven's precaution with his prescription medications is a description from the Lehi City Police Report. In Officer Hammer's narrative, on page 4 of <u>Exhibit D</u>, it explains that Steven's two bottles of oxycodone had to be retrieved "from a locked safe in the close." Steven was so cautious about what he took, he kept the bottles in a locked closed.

28. Included with this appeal were two dozen letters from family and friends stating that Steven was a happy person who was not about to commit suicide.

29. In a letter dated February 10, 2020, Cigna stated in part, "[w]e received your request for an appeal on the claim for Group Accidental Death Insurance benefits through Codale Electric Supply, Inc. policy SOK 601206… We will notify you once we have reached a determination on your appeal."

30. In a letter dated March 11, 2020, Cigna stating that they need additional time to review the appeal and claim and requested a 30-day extension.

31. In a letter dated March 30, 2020, Cigna stated that they need an additional 60-days to review the claim.

32. In a letter dated April 28, 2020, Cigna upheld the denial stating almost the same denial rationale as it previously provided.

33. The April 28, 2020, denial letter includes information from the reviewer which states in part,

    > All of the information in the claim file, including the information you submitted on appeal, was sent to Richard T. Tovar, M.D., Board Certified in Medical Toxicology for review. Dr. Tovar opined:
    >
    > > "Therefore, there is no medical toxicology evidence of any inappropriate usage of oxycodone prior to the decedent's demise. Furthermore, it is not medically possible to determine from a post mortem drug confirmatory blood test if the decedent was taking his medication in an appropriate fashion. All that can be stated is that the decedent died of mix drug toxicity from Oxycodone, Clonazepam, and Escitalopram."
    > > "As per the medical toxicological review of the Oxycodone, there is no evidence of either medical or intentional inappropriate use of Clonazepam. It is not medically possible to determine from a post mortem drug confirmatory blood test if the decedent was taking his medications in an appropriate fashion. All that can be stated is that the Clonazepam contributed to the decedent's death."
    > > "Yes, the medical records as reviewed for both the decedent's primary care and pain management provider indicate that he was taking his medications in an appropriate manner. As previously states, it is not medically possible from post mortem confirmatory drug testing to determine if the decent was taking the drugs appropriately before his death."
    > > "The oxycodone was a significant factor in his death."
    > > "The clonazepam was a significant factor in his death."

34. It appears that Dr. Tovar agreed that it was an accidental death and due to a toxicity between the oxycodone and clonazepam and *not* a purposeful overdose of oxycodone.

35. On February 3, 2022, this firm requested all documents from Cigna that were used to evaluate Steven's death for Jill's claim.

36. Cigna has not provided any of the documents that they utilized to evaluate the cause of Steven's death to either Jill or this firm.

37. The total policy amount that Cigna owes to Jill is $210,000 and must be paid in full.

//

**CAUSE OF ACTION**
**Claim for Benefits Pursuant to 29 U.S.C. §1132(a)(1)(B)**

38. ERISA imposes higher-than-marketplace quality standards on insurers. It sets forth a special standard of care upon plan fiduciaries, namely that they "discharge [their] duties in respect to claims processing solely in the interests of the participants and beneficiaries of the plan." 29 U.S.C. §1104(a)(1).

39. ERISA also underscores the particular importance of accurate claims processing and evaluations by requiring that administrators provide a "full and fair review" of claim denials. 29 U.S.C. § 1104(a)(1).

40. Cigna breached its fiduciary duty when it failed to comply with its obligations under 29 U.S.C. § 1104 and 29 U.S.C. § 1133 to act solely for the exclusive purpose of providing benefits to Plan participants and beneficiaries when it, or its agents, failed to provide a full and fair review of Jill's denied claim.

41. Cigna's actions are in violation of ERISA, demonstrate a significant conflict of interest in Cigna's decision-making process and are a breach of the terms and provisions of the Plan establishing the rights and liabilities of the parties.

42. The failure and refusal of Defendants to pay benefits according to the terms of the Plan has resulted in a loss to Jill of the insurance benefits that Steven requested and paid for.

43. Jill is entitled to an Order for payment of the AD&D insurance benefits.

44. In addition, Jill is entitled to an award of pre- and post-judgment interest pursuant to U.C.A. §15-1-1, and an award of attorney fees and costs pursuant to 29 U.S.C. § 1132(g).

WHEREFORE, Plaintiff prays for relief as follows:

1. On Plaintiff's Cause of Action, for an Order that Defendants must pay the AD&D insurance benefits elected by Steven, for an award of prejudgment interest pursuant to U.S.C. §15-1-1, and an award of attorney fees pursuant to 29 U.S.C. §1132(g); and

2. For such further relief as the Court finds equitable.

DATED this 29th day of April, 2022

                                                            s/ Brian S. King
                                                        Brian S. King
                                                       Attorney for Plaintiff

Plaintiff's Address:
Utah County, State of Utah