IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| **JILL L. JENSEN,**<br><br>**Plaintiff,**<br><br>vs.<br><br>**LIFE INSURANCE COMPANY OF NORTH AMERICA, et al.,**<br><br>**Defendants.** | MEMORANDUM DECISION AND ORDER<br><br>Case No. 2:22-CV-293-DAK-DAO<br><br>Judge Dale A. Kimball<br><br>Magistrate Judge Daphne A. Oberg |

This matter is before the court on Plaintiffs Jill L. Jensen's Motion for Summary Judgment [ECF No. 20]. On October 31, 2023, the court held a hearing on the motion. At the hearing, Brian S. King represented Plaintiff, and James L. Barnett represented Defendant Life Insurance Company of North America. The court took the motion under advisement. After carefully considering the memoranda filed by the parties and the law and facts relevant to the pending motion, the court issues the following Memorandum Decision and Order.

## BACKGROUND

Plaintiff Jill L. Jensen's ("Jensen") husband Steven D. Jensen ('Steven"), died on February 1, 2019. At the time of his death, Steven was employed at Codale Electric Supply, Inc.("Codale"). Codale established a group employee benefit welfare plan ("Plan") for eligible employees and their dependents, which is governed by the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001-1461 ("ERISA"). The Plan provides Accidental Death & Dismemberment ("AD&D") benefits funded by a Group Accident Policy through Defendant Life Insurance Company of North America ("LINA"). The Group Accident Policy has an effective date of July 1, 2010, and is governed by Delaware law. The Group Accident Policy is a "plan document within the meaning of

ERISA." Codale, as the Plan Administrator, appointed LINA as a Claim Fiduciary "responsible for adjudicating claims for benefits under the Plan." LINA is both the claim administrator for AD&D claims and the entity responsible for the funding of the Plan's AD&D benefits. Jensen also sued Cigna Health and Life Insurance Company but dismissed it as a defendant early in the case.

Steven had been suffering from chronic pain for many years and had a prescription for oxycodone for over five years before his death. Steven received treatment from Andrew Ward at a pain management clinic, who renewed Steven's prescription six weeks before he died. Ward conducted a psychiatric assessment among other screening evaluations and determined that Steven was using his oxycodone properly.

On January 30, 2019, Steven saw Dr. Michael Cosgrave, who prescribed Steven clonazepam to take as needed to manage his anxiety. Dr. Cosgrave did not indicate that Steven had any psychiatric risk of suicide or suicidal ideation.

On the night of January 31, 2019, Steven went to bed, and on February 1, 2019, Jensen found Steven dead in the bedroom. Steven's autopsy determined that he died of "oxycodone and clonazepam toxicity" and noted that the manner of death was an accident. The potential for death when mixing oxycodone and clonazepam is documented in medical literature.

On September 4, 2019, Jensen's attorney wrote to LINA, explaining that Jensen had submitted claims to LINA for Steven's accidental death that LINA had not acknowledged, demanding that LINA pay the life insurance and AD& D benefits available under Steven's benefits plan with Codale within thirty days, and including Steven's death certificate. LINA responded in a letter, dated September 12, 2019, stating that LINA was contacting the policyholder for additional information and that while the review was ongoing, LINA would provide a status update every thirty days.

On October 1, 2019, LINA approved the life insurance claim. In a separate letter, also dated October 1, 2019, LINA stated that the accidental death claim was still being reviewed and that it would provide updates every thirty days. The letter also asked Jensen to sign and return a records request authorization form. On October 15, 2019, Jensen's attorney submitted the form.

On December 4, 2019, LINA denied the AD&D claim because it did not satisfy all the applicable policy provisions. The cover page of the Policy states that "THIS IS A GROUP ACCIDENT ONLY INSURANCE POLICY. IT DOES NOT PAY BENEFITS FOR LOSS CAUSED BY SICKNESS." The Policy defines a "Covered Accident" as "[a] sudden, unforeseeable, external event that results, directly and independently of all other causes, in a Covered Injury or Covered Loss and meets all of the following conditions: . . . 2. Is not contributed to by disease, Sickness, mental or bodily infirmity; 3. Is not otherwise excluded under the terms of the Policy." The Policy excluded from coverage any injury or loss "which, directly or indirectly, in whole or in part, is caused by or results from . . . . 7. Sickness, disease, bodily or mental infirmity, bacterial or medical or surgical treatment thereof, . . . . [or] 11. Voluntary ingestion of any narcotic, drug, poison, gas or fumes, unless prescribed or taken under the direction of a Physician and taken in accordance with the prescribed dosage."

LINA's letter explained that "the Assistant Medical Examiner specifically states that Mr. Jensen had 'a high toxic/borderline lethal level of oxycodone' in his blood, and the level of this drug found in his system is within the documented lethal range. Thus, the levels of these drugs are higher than would be expected . . . if taken as prescribed.." LINA also noted that the autopsy diagnosis of pulmonary edema was "consistent with drug overdose and abuse," the "pill count showed that [Steven] was 'short 73 oxycodone,' and Steven "was believed to have previously overdosed on oxycodone." Based on these findings, LINA concluded that Steven's death was

3

"'directly or indirectly, in whole or in part,' caused by or the result of his 'voluntary ingestion of any narcotic, drug' namely, oxycodone, that he was not taking 'in accordance with the prescribed dosage.'" LINA also denied the claim based on the policy's exclusion for any injury or loss caused by or the result of sickness, disease, bodily or mental infirmity because Steven was prescribed the medications for chronic conditions, not to treat any accidental injury or trauma.

Jensen appealed LINA's denial and included the autopsy report from the Utah Office of Medical Examiner which stated the manner of death was an accident and that the immediate cause of death was oxycodone and clonazepam toxicity. Jensen argued that the toxicology results do not show that Steven overdosed or took any amount of oxycodone beyond the prescribed amount. Jensen also retained Dr. Randall Baselt, who reviewed the relevant documents and concluded that the concentrations of the drugs were consistent with what he would expect to find in someone taking oxycodone and clonazepam as they were prescribed to Steven. In a letter, dated January 24, 2020, Dr. Baselt confirmed that based on his review, Steven was taking the drugs consistent with how they were prescribed to him. Jensen also included in the appeal two dozen letters from family and friends stating that Steven was a happy person who would not commit suicide.

After two extensions to review the appeal, on April 28, 2020, LINA upheld the denial of the AD&D claim. LINA noted that Dr. Baselt had opined that Steven was taking oxycodone and clonazepam consistent with how they were prescribed. LINA's denial letter further stated that all the information in the claim file was sent to Dr. Richard T. Tovar, who is Board Certified in Medical Toxicology. Dr. Tovar opined that "there is no medical toxicology evidence of any inappropriate usage of oxycodone prior to the decedent's demise. Furthermore, it is not medically possible to determine from a post mortem drug confirmatory blood test if the decedent was taking his medication in an appropriate fashion. All that can be stated is that the decedent died of mix

4

drug toxicity from Oxycodone, Clonazepam, and Escitalopram." Therefore, LINA did not affirm denial of the claim based on the inappropriate usage of medication.

Although LINA abandoned its denial based on misuse of prescribed medications, it affirmed its denial of the claim based on the exclusion for loss caused by disease, sickness, mental or bodily infirmity. LINA's denial letter discussed its disagreement with Jensen that the medical or surgical treatment clause in the sickness/disease exclusion is ambiguous. LINA stated that it applies the 'medical or surgical treatment' clause to all antecedent nouns, and that this is consistent with generally accepted rules of writing and construction in the English language. LINA also noted that ERISA common law supports application of the medical or surgical treatment clause to all antecedent nouns. LINA concluded that Steven's death was caused by his ingestion of oxycodone and clonazepam and that the only reason he took these medications was because of his sicknesses, diseases, bodily or mental infirmities. Cigna then informed Jensen that she could pursue a second appeal request or file a civil action under ERISA.

On February 3, 2022, Jensen requested all documents from Cigna that were used to evaluate the AD&D claim. Jensen filed this action on April 29, 2022.

## DISCUSSION

### Jensen's Motion for Summary Judgment

1. **Standard of Review**

The parties dispute whether the court should apply a de novo or arbitrary and capricious standard of review to Jensen's appeal. Based on the Plan language delegating discretionary authority to LINA, the court would typically apply the arbitrary and capricious standard of review. *Hancock v. Metropolitan Life Ins*, 590 F.3d 1141, 1146 (10th Cir. 2009). However, Jensen argues that the standard of review in this case should be de novo because LINA was operating under a

5

conflict of interest and the Policy is subject to Utah insurance law which now bans discretionary authority clauses in insurance policies.

Where, as here, an entity that administers a plan both determines "whether an employee is eligible for benefits and pays benefits out of its own pocket, . . . this dual role creates a conflict of interest." *Metropolitan Life Ins. v. Glenn*, 554 U.S. 105, 114 (2008). A reviewing court should consider that conflict as a "factor in determining whether there is an abuse of discretion." *Id.* at 115. However, the Supreme Court emphasized that "conflicts are but one factor among many that a reviewing judge must take into account." *Id.* at 117.

The mere denial of a claim does not constitute evidence of a conflict of interest based on the claims administrator's dual role. Jensen bears the burden of showing abuse arising out of LINA's dual role capacity, and she has not cited any evidence that LINA's dual role influenced the determination of her claim. *McClenahan*, 416 F. App'x at 697. Jensen argues that Cigna's actions are in violation of ERISA, demonstrate a conflict of interest in Cigna's decision-making process, and are a breach of the Plan's provisions which resulted in Jensen not receiving benefits. But these allegations are not specific enough to demonstrate a conflict of interest significant enough to change the standard of review to de novo.

With respect to whether Utah insurance law requires a de novo standard of review, LINA counters that the Policy took effect eight years before the enactment of Utah Code Ann. § 31A-21-314 and the statute does not state that it applies retroactively. Jensen, however, argues that she is not asking the court to apply the statute retroactively because the Policy language provides that the court should consider the law as it was on the date of Steven's death, not the effective date of the Policy. The Policy states under the heading "Death Benefit" that "[i]f an Insured dies, the Insurance Company will pay the Life Insurance Benefit in force for that Insured on the date of his

or her death." Jensen argues that this Policy language supports the use of Steven's date of death as the operative date for determining benefits.

Utah Code Ann. § 68-3-3 provides that a "provision of the Utah Code is not retroactive, unless the provision is expressly declared to be retroactive." Jensen, however, argues that while substantive changes in the law usually do not apply retroactively unless the statute specifically states that it does, procedural changes typically apply retroactively. The parties dispute whether the changes in Utah Code Ann. § 31A-21-314 are substantive or procedural, which would determine whether the statute falls within an exception to the general prohibition of retroactive application. *Harvey v. Cedar Hills* City, 227 P.3d 256, 259-60 (Utah 2010).

Procedural laws "control the mode and form of procedure for enforcing the underlying substantive rights." *Evans & Sutherland Computer Corp. v. Utah State Tax Comm'n*, 953 P.2d 435, 438 (Utah 1997). The Utah Supreme Court has held that laws affecting a standard of review are a procedural change and apply retroactively. *Id.* Therefore, Jensen contends that the discretionary language in the Policy is unenforceable under Utah law and the court must default to the de novo standard.

However, LINA relies on *McClenahan v. Metropolitan Life Ins. Co.*, 416 F. App'x 693, 696 (10th Cir. 2011), in which the Tenth Circuit found that a Colorado statute banning ERISA deferential review does not apply retroactively, and, therefore, the district court properly applied the arbitrary and capricious standard of review. *See also Hollinshead v. Stanley Works Long Term Disability* Plan, No. 10-cv-3124-WJM-CBS, 2012 U.S. Dist. LEXIS 38033 at *6-7 (D. Colo. Mar. 21, 2012) ("As the Plan came into effect before [the Colorado statute] was enacted, the Court finds that the statute cannot retroactively apply to Plaintiff's claim.").

But *McClenahan*, involved a situation where all the events at issue had occurred before the

7

Colorado law banning discretion in insurance policies went into effect. Here, the only event that happened before the Utah statute went into effect was the issuance of the Policy. Steven's death, the claim, and LINA's decisions were all after the Utah statute was in place. Jensen points out that LINA did not interpret the Policy until Jensen filed the claim, which was after Utah law changed.

The court finds compelling arguments on each side of this issue, but ultimately concludes that it does not need to determine whether Utah's ban on discretionary language applies to the case at hand. As explained below, even under a de novo standard of review, the court agrees with LINA's interpretation of the Policy language and its application of the Policy language to this case.

**2. Benefits Claim**

The issue before the court is whether LINA reasonably applied the sickness/disease exclusion to deny Jensen's AD&D claim for benefits in relation to Steven's death. Steven was prescribed and took oxycodone and clonazepam for the treatment of chronic foot pain and anxiety, which resulted in his death from oxycodone and clonazepam toxicity.

The Policy defines a covered loss, in relevant part, as "[a] loss that is . . . [t]he result, directly and independently of all other causes, of a Covered Accident;" and "[o]ne of the Covered Losses specified in the Schedule of Covered losses." The Policy defines a "Covered Accident" as [a] sudden, unforeseeable, external event that results, directly and independently of all other causes, in a Covered Injury or Covered Loss and meets all of the following conditions: . . . . is not contributed to by disease, Sickness, mental or bodily infirmity" and "is not otherwise excluded under the terms of this Policy."

If Jensen meets all of these conditions, the only remaining question is whether any Policy exclusion applies. LINA's final denial relied on only the sickness/disease exclusion. Therefore, the court must determine whether LINA reasonably applied the sickness/disease exclusion to deny

8

Jensen's AD&D claim for benefits. LINA concluded that the only reason Steven took the medications was the result of the medical treatment for his sicknesses, diseases, bodily or mental infirmities, and that Steven's death was directly or indirectly, in whole or in part, caused by or resulting from the medical treatment of sickness, disease, or bodily or mental infirmity.

Jensen's reliance on the Medical Examiner's finding that the manner of death was by accident is misplaced. The Medical Examiner was not considering the terms of the Policy. Courts have consistently held that a Medical Examiner's statement of a manner of death is not determinative of whether coverage exists under an AD&D policy. *See, e.g., Davis v. Federal Ins.*, 382 F. Supp. 3d 1189, 1197 (W.D. Okla. 2019).

Sickness/disease exclusions are common in AD&D policies. Federal courts "uniformly apply the medical treatment' exclusion where an accidental 'mishap in the course of treatment causes death because 'the normal understanding' is that 'injuries caused not by the illness itself but by the treatment of the illness' are excluded under policies similar to the one at issue in this case." *Lebron v. Nat'l Union Fire Inc.*, 849 F. App'x 484, 488 (5th Cir. 2021) (unpublished). These cases recognize that "[m]edical treatment is often risky and when the risk materializes and the patient dies, we do not call it dying in or because of an accident; it is a death from sickness." *Senkier v. Hartford Life & Acc. Ins.*, 948 F.2d 1050, 1053 (7th Cir. 1991).

Jensen's arguments rest on a fundamental mischaracterization of AD&D insurance. The Group Accident Policy emphasizes that it "DOES NOT PAY BENEFITS FOR LOSS CAUSED BY SICKNESS." A covered accident cannot be "contributed to by disease, sickness, mental or bodily infirmity." The Policy unambiguously draws a distinction between a loss due to a "covered accident: and a loss due to a nonaccidental cause, such as sickness. The sickness exclusion arises out of the distinction between accidental and nonaccidental causes of loss. For

9

example, if a preexisting sickness or the treatment of that sickness "directly or indirectly, in whole or in part, . . . caused" a person's death, a claimant could not recover AD&D benefits for death. *Pirkheim v. First Unum Life Ins.*, 229 F.3d 1008, 1010-11 (10th Cir. 2000).

Jensen argues that the sickness/disease exclusion is ambiguous. The sickness exclusion precludes benefits for "[s]ickness, disease, bodily or mental infirmity, bacterial or viral infection or medical or surgical treatment thereof." Jensen argues that "medical or surgical treatment thereof" should apply only to "bacterial or viral infection" not the entire list of "sickness, disease, bodily or mental infirmity." But Jensen's reliance on the lack of a comma does not help her argument. Under general rules of grammar, a comma is not necessary for the final phrase to modify the list of items before it. In fact, if the sentence had a coma after bacterial or viral infection, it would appear to be an oxford comma and the sentence would appear to be a serial list of separate items that did not modify each other. Her argument that the sentence required another comma for the final phrase to modify the listed items would make the sentence ambiguous because the final word thereof would then be confusing. The court finds that the language in the sentence provides for only one reasonable interpretation. The court, therefore, does not agree with Jensen's argument that the lack of a comma makes the sentence ambiguous.

Jensen essentially argues that Steven had to die from the foot pain or anxiety for the exclusion to apply. But that reads out completely the first part of "*directly or indirectly, in whole or in part, is caused by or results from* . . . sickness, disease, bodily or mental infirmity." Jensen's argument also takes the language out of context. A "covered accident" must result "directly and independently of all other causes" and not be "contributed to by disease, sickness, mental or bodily infirmity." The Policy language clearly contemplates that a death resulting from the treatment of a sickness would not be a covered accidental loss." *Lebron*, 849 F. App'x at 488.

10

Courts have upheld the denial of AD&D claims based on sickness exclusions with language identical to the exclusion in this case. *See, e.g., Towers v. Ife Ins. Co. of N. Am.*, 6:09-cv-1318-Orl-28GJK, 2011 U.S. Dist. LEXIS 95388 at *19-22 (M.D. Fla. Aug. 25, 2011); *Raymond v. Life Ins. Co. of Am.*, 924 F. Supp. 2d 1345, 1349-51 (S.D. Fla. 2010); *Rodriguez v. Life Ins. Co. of N. Am.*, No. A:08-CA-299-LY, 2009 U.S. Dist. LEXIS 142461 at *9-13 (W.D. Tex. Dec. 8, 2009).

Jensen further argues that the sickness exclusion and the drug exclusion are inherently contradictory resulting in an ambiguity. But the court sees no inherent contradiction in the two exclusions. In a non-ERISA case, another court rejected an ambiguity argument essentially identical to Jensen's. *Grobe v. Vantage Credit* Union, 679 F. Supp. 2d 1020, 1033-34 (E.D. Mo. 2010). The court recognized that "AD&D Policies are intended to cover accidental deaths and losses, not all deaths and losses." *Id.* The court explained that the policy made a number of distinctions between what was covered "based, it seems, on the difference between a death that is 'foreseeable' or in some way related to an assumed risk, and one that is not." *Id.* "The medical treatment exclusion is intended to exclude coverage for those individuals who have assumed the risks of medical treatment, including the possibility of death. Courts have consistently held that a medical treatment exclusion applies to accidental death caused by an overdose of drugs prescribed by a doctor in the course of treatment for a sickness or disease. Death caused by sickness or disease, and the medical treatment sought for such, is not unforeseeable." *Id.* However, the prescription drug exclusion, distinguishes between taking drugs legally and illegally when drugs are legally prescribed for an injury that is not a disease or sickness. *Id.* The court explained that the exception in the drug exclusion for legally prescribed drugs does not modify the definition of injury "which specifies that losses resulting from medical treatment of a sickness or disease are not

11

injuries." *Id.*; *see also Cady v. Hartford Life & Accident Ins.*, 930 F. Supp. 2d 1216, 1228-30 (D. Idaho 2013) (ERISA case following *Grobe*'s analysis).

The court concludes that Jensen's arguments are not persuasive. Jensen's position ignores the other language in the Policy, case law on this type of exclusion, and relies almost entirely on her argument that the lack of a comma makes the language ambiguous. The language of the sickness exclusion in this case unambiguously precludes AD&D benefits for a death like Steven's arising out of taking medications prescribed for the treatment of chronic medical conditions. This conclusion is consistent with both the purpose of an AD&D policy and the extensive case law upholding the denial of AD&D claims under sickness exclusions for losses due to chronic conditions. The court, therefore, agrees with LINA that the undisputed facts establish that the circumstances surrounding Steven's death fall within the scope of the sickness exclusion.

## CONCLUSION

Based on the above reasoning, Plaintiff Jill L. Jensen's Motion for Summary Judgment [ECF No. 20] is DENIED. The court affirms the denial of benefits in this case.

DATED this 4th day of January 2024.

BY THE COURT:

DALE A. KIMBALL,
UNITED STATES DISTRICT JUDGE